IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 42508

| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 588 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 29, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JAMES ROBERT MALEC, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge.

Judgment of conviction, affirmed.

Sara B. Thomas, State Appellate Public Defender; Eric D. Fredericksen, Appellate Unit Chief, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

James Robert Malec appeals from the judgment of conviction entered upon the jury verdict finding him guilty of voluntary manslaughter. Specifically, Malec argues the district court erred in excluding as unfairly prejudicial a defense exhibit that was relevant to Malec's self-defense claim. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

The facts of this case are largely uncontested. Malec and his wife, Gwen Moore, had family and friends over for Christmas dinner. Justin Eilers, Moore's son and Malec's stepson, and Eilers' ex-girlfriend were also present. Eilers was a 6-foot-2-inch, 230-pound professional mixed martial arts fighter. Later in the evening, Eilers got into a heated argument with his ex-girlfriend. Malec and Moore requested Eilers take the argument outside. Eilers and his ex-girlfriend continued to yell and argue outside for approximately fifteen to thirty minutes. Eilers

came back inside, approached Malec and Moore in the kitchen, and began to yell at them. Moore described Eilers as "furious." Eilers then used his arm to swipe items off the kitchen counter. Moore testified she attempted to calm Eilers down, but further testimony revealed those attempts resulted in Eilers becoming louder and more angry. Moore testified she told Eilers to leave, but he refused. Malec testified Eilers then started to threaten Malec by saying, "What do you got, old man? Put one in me. Put one in me." He also stated, "I'll kill you. I'll do it." Malec testified Eilers swiped the counter again and appeared to hit Moore. Malec drew his firearm and said, "You need to get back. You need to get down on the ground now." Malec testified Eilers took a step forward with his hands raised and Malec fired. Eilers died of a single bullet wound to the chest.

The State charged Malec with second degree murder, Idaho Code § 18-4003(g). Malec asserted self-defense. Prior to trial, the State filed a motion in limine to prevent Malec from presenting a video of Eilers participating in a professional mixed martial arts competition. The ten-second video shows Eilers move across the ring, knock the other athlete to the mat with his fists, and continue to strike the other athlete who was still down on the mat. The district court excluded the evidence as unfairly prejudicial at trial, reasoning:

> Based on my viewing of that clip and that the--and the fact that the circumstances would be dissimilar, but also based on the viewing of the clip that I think that the danger of the unfair prejudice substantially outweighs the relevance that it would serve as a demonstrative exhibit.

The court added, "I said the unfair prejudice, but there are other things under [Idaho Rule of Evidence] 403, and--for purposes of making a record. Confusion, possibility of misleading the jury. I think that misleading of the jury is potentially a real problem with that."

Malec was convicted by a jury of the lesser offense of voluntary manslaughter. The district court imposed a unified sentence of fifteen years, with six and one-half years fixed. Following the grant of his post-conviction petition, Malec timely appeals.

## II.

## ANALYSIS

### A. Exclusion of Evidence

On appeal, Malec argues the district court erred in excluding the video of Eilers participating in a mixed martial arts match because the video was relevant to Malec's claim of self-defense, and its probative value was not outweighed by unfair prejudice. The State argues

2

the video was not relevant to any elements of Malec's self-defense claim and because the circumstances in the video were dissimilar from the events at issue, the video had potential to cause confusion and mislead the jury. We examine the district court's decision to exclude the video to determine whether it was properly held to be: (1) relevant under Idaho Rule of Evidence 401; and (2) more prejudicial than probative under I.R.E. 403.

In order for self-defense to be a complete defense to second degree murder, the jury was instructed to find all of the following:

(1) The defendant must have believed that the defendant was in imminent danger of death or great bodily harm.

(2) In addition to that belief, the defendant must have believed that the action the defendant took was necessary to save the defendant from the danger presented.

(3) The circumstances must have been such that a reasonable person, under the circumstances, would have believed that the defendant was in imminent danger of death or great bodily injury and believed that the action taken was necessary.

(4) The defendant must have acted only in response to that danger and not for some other motivation.

(5) When there is no longer any reasonable appearance of danger, the right of self-defense ends.

Malec argues the evidence is relevant because it is demonstrative of Eilers' physical ability, making it more probable than not that Malec reasonably believed he was in imminent danger at the time he shot Eilers. The State argues the video is not relevant because Eilers' participation in a sanctioned mixed martial arts match is not demonstrative of Eilers' abilities or behavior outside of that particular context. Further, the State contends because Malec had not seen the video prior to trial, it was not relevant to show whether Malec reasonably believed he was in imminent danger.

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de

novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

At issue on appeal is the third prong of the self-defense jury instruction, specifically whether Malec reasonably believed he was in imminent danger at the time he shot Eilers. As a result, evidence of Eilers' physical abilities would be relevant to support Malec's claim of self-defense. At the hearing for the State's motion in limine, Malec argued,

> [Malec] knows about Justin Eilers' propensity and abilities in the ring. That is part of the decision making process:
> . . . .
> This individual [Eilers] had the ability to--to cause grievous bodily harm. And to suggest that a video, a very short video of his fighting abilities is irrelevant, demonstrative of his fighting abilities, and which demonstrates the kind of matches that Mr. Malec has observed personally of Justin Eilers, down close and personal.
> Well, Judge, relevance is relevance. And it does tend to prove a fact that is at issue. And that is why . . . Mr. Malec [did] react in the way he did with what he was confronted with. That's why it's relevant.

At trial, the court reasoned, "I can understand the argument that it is--that there is some relevance to it . . . . And so it may have some relevance for demonstrative purposes." This finding was correct.

However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. I.R.E. 403; *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). The Idaho Supreme Court has previously explained the weighing process that a district court must use in determining whether to admit or exclude evidence under I.R.E. 403:

> The rule creates a balancing test. On one hand, the trial judge must measure the probative worth of the proffered evidence. The trial judge, in determining probative worth, focuses upon the degree of relevance and materiality of the evidence and the need for it on the issue on which it is to be introduced. At the other end of the equation, the trial judge must consider whether the evidence amounts to unfair prejudice. . . . Only after using this balancing test, may a trial judge use his discretion to properly admit or exclude the proffered evidence.

*Davidson v. Beco Corp.*, 114 Idaho 107, 110, 753 P.2d 1253, 1256 (1987) (citations omitted). Evidence should be excluded as unfairly prejudicial if it invites inordinate appeal to lines of reasoning outside of the evidence or emotions which are irrelevant to the decision-making process. *State v. Rhoades*, 119 Idaho 594, 604, 809 P.2d 455, 465 (1991).

4

An I.R.E. 403 balancing determination by the district court is reviewed for an abuse of discretion. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In this case, the district court understood its discretion in deciding whether to admit or exclude the evidence. The court also correctly identified I.R.E. 403 as the proper legal standard. At issue is whether the district court properly applied I.R.E. 403. Malec argues the probative value of the video was not outweighed by unfair prejudice because the video "does not 'invite inordinate appeal to lines of reasoning outside the evidence or emotions which are irrelevant to the decision making process.'" Malec contends the State suffers little to no prejudice from the video because the jury was informed throughout trial that Eilers was a professional mixed martial arts fighter. Malec further argues the violent nature of the sport does not make the video prejudicial, it is simply demonstrative evidence of what the jury had already been told by witnesses about how Eilers fights. The State argues the unfair prejudice outweighs any probative value the video may have because if the jury saw the video, they may translate the violence of a sanctioned mixed martial arts match to a completely unrelated, dissimilar activity, thus tainting its ultimate decision.

Here, the video was relevant to help the jury determine whether Malec's belief that he was in imminent danger was reasonable. However, there was still a risk that the video would appeal to lines of reasoning outside the evidence or emotions which are irrelevant to the decision-making process because the video depicted Eilers' violent behavior in completely different circumstances than the events that occurred when he was shot. There was a risk the jury would impute that violence to a completely dissimilar context which would, in turn, potentially compromise its ultimate decision. In this case, the district court properly weighed the probative value of the video against the danger of unfair prejudice, and properly concluded the admission of the video was unduly prejudicial, or could possibly confuse or mislead the jury.

5

Because the court balanced the probative value against the prejudicial effect, as is required under I.R.E. 403, the district court did not err in excluding the evidence.

**B.      Harmless Error**

Even if the district court erred in excluding the video, the error was harmless. Malec argues the exclusion of the evidence was not harmless error because the excluded video was relevant to the key issue in the trial; i.e., whether Malec's actions were objectively reasonable at the time he shot Eilers. If so, Malec argues, he would have established a complete defense to the charge. In response, the State argues the error was harmless because multiple witnesses already testified what the video was proffered to show: Eilers' level of violence, athleticism, and occupation as a professional fighter.

Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). An improper evidentiary ruling may be deemed to be harmless if the error does not affect a substantial right of the defendant. *State v. Parker*, 157 Idaho 132, 139-140, 334 P.3d 806, 813-814 (2014). In such a case, the burden is on the State to establish "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010).

The purpose of the video was to provide evidence of Eilers' physical abilities so the jury would understand why Malec reasonably believed he was in imminent danger when Eilers approached him. However, the jury had already heard from several witnesses about Eilers' physicality, his sometimes violent behavior, his actions during mixed martial arts matches, and the nature of a mixed martial arts match. Gwen Moore testified Eilers was an excellent athlete, and mixed martial arts was a vicious and brutal sport that only ended when someone "tapped out,"[1] or was knocked unconscious. David Shelton testified he was afraid of Eilers because Eilers was big and was a fighter. Jasmine Malec testified Eilers had a reputation for being out of control and violent. Malec himself testified that he had seen Eilers fight in several matches and

---

[1]      A tap out occurs in a fighting match when either the referee or one competitor taps the mat, forfeiting the match. Definition taken from http://breakingmuscle.com/mma/what-s-that-move-called-a-glossary-of-mma-terms     and     http://www.sportingcharts.com/dictionary/sports-betting/tapped-out.aspx, both last accessed on June 21, 2016.

was quite familiar with Eilers' physical prowess, but Malec had not seen this specific video before trial. Thus, the jury heard ample evidence of what the video would have portrayed: Eilers' physical abilities. Because the jury had already heard from multiple witnesses about Eilers' physical abilities, the video would have been cumulative evidence of what the jury had already heard. Moreover, despite all the testimony describing Eilers' actions in mixed martial arts matches, his sometimes violent behavior, and his physicality, the jury rejected Malec's defense and found Malec guilty of voluntary manslaughter. Because the jury had already been presented with this evidence, and rejected it, the State established beyond a reasonable doubt the exclusion of the video did not contribute to the verdict. Thus, to the extent the exclusion of the evidence was error, it was harmless error.

## III.

## CONCLUSION

The district court properly concluded evidence of Eilers' physical abilities was relevant to Malec's claim of self-defense. The district court also properly engaged in a balancing determination under I.R.E. 403 to find the probative value of the video as demonstrative evidence was outweighed by the danger of unfair prejudice. Even if the district court erred in excluding the video, the error was harmless. Therefore, Malec's judgment of conviction is affirmed.

Judge GUTIERREZ and Judge GRATTON **CONCUR**.